# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION
# LEXINGTON

|  |  |  |
|---|---|---|
| | ) | |
| **SASHA NICOLE MARTIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **NO. 5:22-CV-00131-MAS** |
| **v.** | ) | |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| | ) | |
| **Commissioner of Social** | ) | |
| **Security,** | ) | |
| | ) | |
| **Defendant.** | | |

## MEMORANDUM OPINION & ORDER

Plaintiff Sasha Nicole Martin ("Martin") appeals the Commissioner's denial of disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA").[1] Before the Court are the parties' cross-motions for summary judgment. [DE 17, 19]. For the reasons discussed below, the Court finds that Administrative Law Judge ("ALJ") Robert B. Bowling applied the proper legal framework and supported his non-

---

[1] The legal standard DIB claims mirrors that of Supplemental Security Income ("SSI"). *See Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841, No. 90-3265, 1991 WL 310, at \*3 (6th Cir. 1991) (table). "The standard for disability under both the DIB and SSI programs is virtually identical." *Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at \*3 (E.D. Mich. Jan. 14, 2013), *report and recommendation adopted*, 2013 WL 450934 (E.D. Mich. Feb. 6, 2013); *see also Elliott v. Astrue*, No. 6:09-CV-069-KKC, 2010 WL 456783, at \*4 (E.D. Ky. Feb. 3, 2010). The Court generally references SSI and DIB case law interchangeably, mindful of the particular regulations pertinent to each type of claim.

1

disability finding with substantial evidence in the record.  The Court grants the Commissioner's motion and denies Martin's competing motion.

## I.    LEGAL FRAMEWORK

Judicial review of the ALJ's decision is deferential and strictly limited.  The Court's sole task is to determine whether the ALJ applied the correct legal standards and whether the ALJ's factual findings are supported by substantial evidence in the record.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").  Substantial evidence is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  "The substantial-evidence standard allows considerable latitude to administrative decision makers" and "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts."  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The Court must make its substantial evidence determination based on the record. *Cutlip*, 25 F.3d at 286.  However, the Court need not comb the entire (lengthy) record in search for facts supporting under-developed arguments.  [*See* DE 16 (General Order No. 13-7) (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)) ("The parties shall provide the Court with specific page

citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.")]. Further, the Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Court must affirm the ALJ's decision if there is substantial evidence in the record to support it, even if substantial evidence might also support the opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 393 (6th Cir. 2004); *Mullen*, 800 F.2d at 545. Likewise, the Court must affirm any ALJ decision supported by substantial evidence, even if the Court itself might have reached a different original result. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

For context, the Court briefly outlines the proper five-step sequential analysis as conducted by an ALJ in determining disability status. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. §§ 416.920(a), 404.1520(a). In the first step, the ALJ decides whether the claimant is performing substantial gainful activity. 20 C.F.R. §§ 416.920(a)(4)(i), 404.1520(a)(4)(i). In the second step, the ALJ determines whether the claimant suffers from any severe impairments. *Id.* at §§ 416.920(a)(4)(ii), 404.1520(a)(4)(ii). In the third step, the ALJ decides whether such impairments, either individually or collectively, meet an entry in the Listing of Impairments. *Id.* at §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii). In the fourth step, the ALJ determines the claimant's residual functional capacity ("RFC")

3

and assesses whether the claimant can perform past relevant work. *Id.* at §§ 416.920(a)(4)(iv), 404.1520(a)(4)(iv).  Finally, in the fifth step, the burden shifts to the Commissioner.  The ALJ must consider and decide whether there are jobs that exist in significant numbers in the national economy that the claimant could perform based on RFC, age, education, and work experience.  *Id.* at §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).  If the ALJ determines at any step that the claimant is not disabled, the analysis ends there.

Because Martin's claim was filed after March 27, 2017, the ALJ must consider and articulate medical opinions and prior administrative medical findings as outlined in 20 C.F.R. § 404.1520c, as set forth in pertinent parts below:

> (a) How we consider medical opinions and prior administrative medical findings. We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. [. . .] We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.
>
> (b) How we articulate our consideration of medical opinions and prior administrative medical findings. We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record. Our articulation requirements are as follows:
>
> (1) Source-level articulation. [. . .] [W]e will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.
>
> (2) Most important factors. The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)

4

are the most important factors we consider . . . . [W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings . . . . We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section[.]

[. . .]

(c) Factors. We will consider the following factors when we consider the medical opinion(s) and prior administrative medical finding(s) in your case:

(1) Supportability. [. . . ]

(2) Consistency. [. . . ]

(3) Relationship with the claimant. [. . . ]

(i) Length of the treatment relationship. [. . . ]

(ii) Frequency of examinations. [. . . ]

(iii) Purpose of the treatment relationship. [. . . ]

(iv) Extent of the treatment relationship. [. . . ]

(v) Examining relationship. [. . . ]

(4) Specialization.

(5) Other factors. We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding. This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. When we consider a medical source's familiarity with the other evidence in a claim, *we will also consider whether new evidence we receive after the medical source made her or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.*

(d) Evidence from nonmedical sources. We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section.

20 C.F.R. § 404.1520c (emphasis added).

> In assessing a claimant's RFC, the Administrative Law Judge must
> necessarily consider the subjective allegations of the claimant and make
> findings. 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling 16-3p
> ("SSR 16-3p"). A claimant's statement that he is experiencing pain or
> other symptoms will not, taken alone, establish that he is disabled; there
> must be medical signs and laboratory findings which show the existence
> of a medical impairment that could reasonably be expected to give rise
> to the pain and other symptoms alleged. 20 C.F.R. §§ 404.1529(a),
> 416.929(a); SSR 16-3p.

*Sikes v. Kijakazi*, 2021 WL 3553490, at *9 (W.D. Ky. Aug. 11, 2021).

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A. PROCEDURAL HISTORY

Martin protectively filed an application for Title II DIB benefits on April 28,
2017, alleging disability beginning July 1, 2016. [Administrative Transcript ("Tr.")
at 298-301]. Martin was 27 years old at the alleged onset date. [Tr. at 12, 323].
Martin earned a high school diploma. [Tr. at 12, 323]. She has prior work experience
as an assistant manager and an office coordinator. [Tr. at 328]. Martin claimed
disability due to fibromyalgia, insulin resistance, bulging herniated disc in her back,
and continuous headaches. [Tr. at 94-95 and 105-06]. A very brief overview of her
medical treatment relevant to her disability claim is provided below and can be found
in the record at DE 14.

Her claims were denied initially and on reconsideration. [Tr. at 118-21].
Following an administrative hearing, the ALJ concluded that Martin was not
disabled in a decision dated July 17, 2019. [Tr. at 65-93 and 149-59]. The Appeals
Council thereafter remanded the case in August 2020. [Tr. at 166-68]. On remand,

and after an administrative hearing, the ALJ found Martin not disabled on January 28, 2021.  [Tr. 15-28].  The Appeals Council declined Martin's request for review [Tr. at 1-6], making the ALJ's January 2021 decision the final agency decision for purposes of judicial review.  20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481.

### B. MEDICAL HISTORY[2]

Martin was diagnosed with fibromyalgia in early 2014.  [Tr. at 21].  From 2013 from 2015, treatment records show Martin complained of back and extremities pain.  [Tr. at 21].  An MRI in April 2013 show mild degenerative disc disease in the lower lumbar spine.  [Tr. at 21].  Martin treated with Julie Kennon, M.D., fairly consistently from February 9, 2017, to September 21, 2020.  [DE 17 at Page ID# 1615, citing administrative transcript pages].  During this time, Dr. Kennon noted Martin reported arthralgias, back pain, fatigue, rashes, decreased range of motion, and fibromyalgia.

In January 2019, Martin attended physical therapy, where she reported "pain with active range of motion in the hips, trunk, abnormal posture with associated weakness, core weakness, left knee joint laxity, and impaired function" but her

---

[2] The relevant period in this case—during which Martin must establish that she was disabled—extends from application filing on July 1, 2016, through the ALJ's corresponding decision on January 28, 2021.  Though evidence preceding the relevant period may be relevant to establish Martin's longitudinal medical record, the proof ultimately must pertain somehow to Martin's disability status during the current application's pendency.  *See, e.g., Cauthen v. Saul*, 827 F. App'x 444, 446 (5th Cir. 2020) (noting that a plaintiff "must show that she meets the statutory definition of disability while her SSI application was pending" and clarifying that the relevant period was between application filing and the decision date); *see id.* (explaining that, though "disability evidence completely unrelated to the relevant period is irrelevant to adjudication of the claim[,] . . . pre-application medical records may be relevant to the existence of a disability during the relevant period" in some instances).

rehabilitation prognosis was expected to be good.  [Tr. at 744-53].  Although it was recommended she attend physical therapy three times a week for six weeks, the record only reflects two visits.  [Tr. at 744-53].

Martin sought care for lower back pain and bilateral sciatica with Dr. Kennon in May of 2019, who ordered a CT of her lumbar spine, sacrum, and coccyx, all of which showed normal findings.  [Tr. at 1278].

Martin sought treatment for kidney stones in February 2020 from John Tuttle, Jr., M.D.  Dr. Tuttle noted she reported back pain, joint pain, neck pain in addition to a history of kidney stones.  [Tr. at 1384].  His examination revealed normal findings.  [Tr. at 1384].  He ordered a CT scan.[3]  In March 2020, Martin visited the Clark Regional Medical Center Emergency Department complaining of pain in her left side, low back, and mid back.  [Tr. at 1094].  The hospital completed a CT of her renal area and the ultimate diagnosis was "calculus of ureter."  [Tr. at 1107].  A CT of her cervical spine in August 2020 was normal. [Tr. at 1411].

C. **MEDICAL OPINIONS**[4]

In September 2017, consultative examiner Dr. Robert Genthner, Ph.D. examined Martin related to her mental impairments.  He opined that Martin has "adequate" capacity to retain and follow simple instructions; ability to understand, retain, and follow detailed or complex instructions; capacity to make simple work-

---

[3] The Court was unable to locate the results of this CT scan in the Administrative Transcript.

[4] Several other physicians rendered medical opinions; however, Martin assigned error only to the ALJ's weighing and supportability and credibility analysis of Drs. Reynolds's and Genthner's opinions, thus, they are the only opinions relevant for in-depth discussion here.  Other medical opinions are touched upon in the Analysis section as applicable, below.

related decisions; and ability to be aware of normal hazards and take precautions. [Tr. at 656]. Dr. Genthner additionally opined that Martin was "mild to moderately" limited in the following: attention/concentration skills described by her test results and presentation today; capacity to relate to employers and coworkers based on history and presentation; capacity to work with others without being distracted or overwhelmed is mild to moderately limited; deal with the public; and tolerate stress and pressure associated with day-to-day work activity. [Tr. at 656, 657]. Dr. Genthner stated that simple changes in routine may be at times overwhelming or debilitating to Martin; and that she may have some difficulty with strict or unsympathetic authority. [Tr. at 656].

In November 2017, treating physician Gregory Reynolds, M.D., completed a checkbox "Medical Source Statement of Ability To Do Work-Related Activities (Physical)" form in which he opined that Plaintiff could lift/carry less than 10 pounds; stand and/or walk less than 2 hours in an 8-hour workday; and must periodically alternate sitting and standing to relieve pain or discomfort. [Tr. at 735-36]. Dr. Reynolds checked "yes" on the form to indicate that pushing and/or pulling was "limited" in the upper and lower extremities. Dr. Reynolds noted multiple trigger points, myofascial pain, diffuse weakness, and multiple joint tenderness. [Tr. at 736]. Dr. Reynolds also opined that Martin could never climb ramps, stairs, ladders, ropes, scaffolds, or crouch; that she could occasionally balance, kneel, crawl, and stoop; she could occasionally finger and feel; and had environmental limitations. [Tr. at 736-38].

## III.   ANALYSIS

Martin makes the single argument that the ALJ's non-disability determination is not supported by substantial evidence "and is the product of legal error where the ALJ failed to properly evaluate the opinion evidence." [DE 17-1 at Page ID # 1614]. Martin specifically complains the ALJ failed to properly evaluate the opinions of Drs. Reynolds and Genthner because he did not sufficiently explain how he considered the evidence that supports his opinion. The Court disagrees.

### A. THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY DETERMINATION WAS SUPPORTED BY SUBSTANTIAL EVIDENCE.

Martin's complains that the ALJ rejected Dr. Reynolds's opinion on the basis that the opinion was rendered via checklist form was inconsistent and was not supported by substantial evidence where the ALJ fails to give an adequate explanation for his findings. [DE 17-1 at Page ID# 1619]. The ALJ's actual finding, however, was that Dr. Reynolds's "checklist-style form appears to have been completed as an accommodation to the claimant and included mostly only conclusions regarding functional limitations without sufficient objective evidence to support those conclusions." [Tr. at 24]. The ALJ was not required to discuss the Dr. Reynolds's notes in additional detail. The ALJ's comment that the form "appears to have been completed as an accommodation to the claimant" goes to the fact that the ALJ did not find the opinion supported by objective evidence, but rather, the ALJ believed it was more supported by the nature of the doctor-patient relationship. The ALJ also explained that Dr. Reynolds provided only "conclusions . . . without sufficient objective evidence[.]" [Tr. at 24]. Dr. Reynolds's opinion included a few notes other

than the checkboxes, for example: "multiple trigger points" [Tr. at 736], "multiple joint tenderness" [Tr. at 736], "Pt has low back dysfunction with muscle spasm & pain daily" [Tr. at 736]. Dr. Reynolds did not point to any object medical tests, such as imaging results, to support his findings. Prior to the 2017 amendments to the Rules, and still instructive here, the Sixth Circuit noted that ALJs "may properly give little weight to a treating physician's check-off form of functional limitations that did not cite clinical test results, observations, or other objective findings." *See Ellars v. Comm'r of Soc. Sec.*, 647 Fed. App'x 563, 566-68 (6th Cir. 2016) (internal citation and quotations omitted).

The ALJ further explained that Dr. Reynolds's opinion "was not consistent with the objective findings at Exhibits 5F, 11F, 20F/96, 21F/208/237, 22F/1, 23F/18, 24F/24 and 25F that showed mild and normal findings." [Tr. at 24]. These exhibits are various treatment records from 2017 and late 2018 through August 2020. [*See generally* Administrative Transcript at DE 14 (Exhibit 25F omitted from the Court's record)]. The ALJ specifically stated in this portion of the decision the specific medical treatment records that he found to be inconsistent with Dr. Reynolds's opinion.

As these statements indicate, the ALJ specifically noted Dr. Reynolds's opinion was not supported by or consistent with the record. 20 CFR § 404.1520c ("The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative

11

medical findings to be."). Martin argues that the ALJ should have considered her complaints of heartburn, fatigue, muscle pain, joint pain, back pain and more that were listed in Dr. Reynolds's treatment notes. [DE 17-1 at Page ID# 1620-21; Tr. at 740-44]. Martin also argues the ALJ relied on "a few isolated examinations and diagnostic imaging fails to reconcile his conclusions with the entirety of the evidence that supports more severe limitations than adopted by the ALJ" and then lists numerous examples from the record, such as decreased range of motion, tenderness, obvious difficulty walking, significant spasm of the paraspinals, and decreased range of motion in some areas, among other conditions. [DE 17-1 at Page ID# 1621-22]. "These are classic examples of invitations to reweigh the evidence and to find other medical opinions more persuasive." *Nasser v. Comm'r of Soc. Sec.*, 2022 WL 17348838, at *2 (6th Cir. Dec. 1, 2022).

The Court finds the ALJ similarly did not err in his consideration of Dr. Genthner's opinion, and in his ultimate finding that it was unpersuasive. As with Dr. Reynolds, the ALJ found that Dr. Genthner's opinion was not supported by or consistent with the record. [Tr. at 24]. Regarding supportability, the ALJ conceded that "Dr. Genthner performed an inperson exam" however, he found "his opinion was diminished to some extent because it was based in part on the claimant's subjective statements and not supported by sufficient objective evidence." [Tr. at 24]. Martin argues this was legal error because it conflicts with case law specifically endorsing the importance of a patient's subjective reports of their symptoms to their medical providers in diagnosing their mental impairments. [*See* DE 17-1 at Page ID# 1625,

12

citing *Nicholas v. Berryhill*, No. 16-14072, 2018 WL 2181463, at *6 (E.D. Mich. Jan. 25, 2018) ("[t]o the extent that the psychologists relied in part on [Plaintiff]'s subjective complaints, they were acting within their expertise as a trained psychologist.")].   Here, the ALJ stated Dr. Genthner's opinion was "diminished to some extent" because it was based on Martin's subjective reports rather than objective evidence.  [Tr. at 24].  Throughout the ALJ's decision, he noted the lack of sufficient objective evidence to support Martin's claimed mental limitations, and affirmative objective evidence to support the opposite conclusion.  For example, the ALJ found the opinions of two other mental consultants who opined Martin had no more than mild mental limitations persuasive because they were supported by sufficient objective evidence—evidence that included the findings from Dr. Genthner's consultative examination.  [Tr. at 24].

Martin argues even more fervently that the ALJ did not support his consistency finding as to Dr. Genthner.  However, this argument also falls flat.  The ALJ found

> Dr. Genthner's opinion was not consistent with the claimant's treatment history that lacks evidence of intense mental health treatment, behavioral health hospitalizations or psychiatric commitments to show that she is more mentally limited. It is not consistent with the claimant's retained ability to drive, provide care for her daughter, prepare meals, dust, sweep, mop, launder clothes, wash dishes, shop in stores, pay bills, count change, handle a savings account, use a checkbook, read and watch television (4E, 5E, 5F/2, Testimony).

[Tr. at 24].  Martin quotes Sixth Circuit case law that points out the reality that "ALJs must be careful not to assume that a patient's failure to receive mental-health treatment evidences a tranquil mental state. For some mental disorders, the very

13

failure to seek treatment is simply another symptom of the disorder itself." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. Jul. 13, 2009). However, the claimant in *White* was a severely debilitated bipolar disorder patient who was awarded benefits at the agency level for some portion of time and appealed challenging an earlier time period that included a treatment gap between her outpatient behavioral health treatment program and her bipolar disorder diagnosis. *Id.* This is very distinguishable from the circumstances at hand, where Martin has had minimal complaints, treatment, and nonsevere diagnosis over a relatively short period of time. Further, the ALJ considered Martin's reports of her own abilities, as quoted above (washing dishes, shopping, paying bills, using a checkbook, and more). [Tr. at 24]. The ALJ found these were inconsistent with the limitations Dr. Genthner endorsed. [Tr. at 24]. Martin takes issue with this finding because Martin reported at the hearing she could do only a few of those things at a time and then needs to rest, and some days cannot do any activities. However, Martin *actually* testified that the weather affects her body and "[i]f it's going to storm I'm very sore and stiff. I can't hardly move for two or three days." [Tr. at 42]. She was not referring to her mental limitations. Ultimately, Martin fails to show how the ALJ reversibly erred by considering that her own reported activities were inconsistent with Dr. Genthner's opinion, in light of the record as a whole. *See Dyer v. Soc. Sec. Admin*, 568 F. App'x 422, 425 (6th Cir. 2014) (evidence of a plaintiff's daily activities such as "personal hygiene and grooming, cooking, cleaning, laundry driving, shopping, visiting with friends and family, caring for her ill mother, and taking care of her pet bird"

14

contradicted the treating physician's opinion); *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 848 (6th Cir. 2005) (substantial evidence supported finding that plaintiff was not disabled where plaintiff could "engage in daily activities such as housekeeping, doing laundry, and maintaining a neat, attractive appearance" and could "engage in reading and playing cards on a regular basis, both of which require some concentration"). Although not determinative, 20 C.F.R. § 404.1529(c)(3) requires the ALJ to consider a claimant's daily activities and whether they are inconsistent with her stated ability to work, which is what the ALJ did in this case. 20 C.F.R. § 404.1529(c)(3) ("Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities[.]").

The regulations and Sixth Circuit case law make clear that RFC findings are for the adjudicator, not a medical professional, to make. *See* 20 C.F.R. § 404.1546(c) (at the hearing level, the ALJ is responsible for assessing RFC); *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015) ("The district judge correctly decided that 'neither the applicable regulations nor Sixth Circuit law limit the ALJ to consideration of direct medical opinions on the issue of RFC.'"). "Moreover, an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). The ALJ carefully considered the consultative medical opinions, Martin's testimony, and the treatment records before her (including those that occurred after the consultative medical exams) to render her RFC determination. The ALJ was not required to include the

limitations in the opinions of Dr. Reynolds or Dr. Genthner in the RFC because the record as a whole did not support them. The Court thus finds the determination was supported by substantial evidence in the record.

Finally, at step five of the analysis, the ALJ relied on the vocational expert in making her disability determination. [Tr. at 27]. The ALJ concluded, based on the testimony of the vocational expert and "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate[.]" [Tr. 27]. *See* 20 C.F.R. § 404.1565. Martin argues this, too, was in error because the residual functional capacity was not supported by substantial evidence and therefore the hypothetical questions posed to the vocational expert failed to incorporate the limitations as opined by Dr. Genthner and that a person limited as described by Dr. Reynolds would be precluded from all employment. However, as discussed above, the Court rejects Martin's argument regarding the ALJ's RFC determination. Thus, the Court finds the ALJ's determination that a significant number of jobs remained in the national economy that Martin retained the capacity to perform and his conclusion that Martin was not disabled was supported by substantial evidence. [Tr. at 20-27].

## IV.   CONCLUSION

For all of the reasons discussed herein, the Court finds that the ALJ's decision was supported by substantial evidence. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's

findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision.").

**IT IS ORDERED** that the Commissioner's motion for summary judgment [DE 19] is **GRANTED** and Martin's competing motion [DE 17] is **DENIED**.  A corresponding Judgment shall follow.

This the 28th day of September, 2023.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY